## UNITED STATES v. HANSON.
### No. 13482.

District Court, E. D. Arkansas, W. D.
March 27, 1943.

Sam Rorex, U. S. Atty., W. H. Gregory, Asst. U. S. Atty., and Leon B. Catlett, Asst. U. S. Atty., all of Little Rock, Ark., for the United States.

John Moncrief, of Stuttgart, Ark., and Jerry Screeton and J. F. Holtzendorff, both of Hazen, Ark., for defendant.

356

LEMLEY, District Judge.

The defendant, James Hanson, was indicted by the Grand Jury for the Eastern District of Arkansas on February 18th, 1941, for violation of the Harrison Anti-Narcotics Act, 26 U.S.C.A.Int.Rev.Code §§ 2550 et seq., 3220 et seq. The indictment is in seven counts and charges the defendant with having, in numerous instances, forged the name of Dr. H. L. White to prescriptions for morphine. To this indictment he entered a plea of guilty, and on April 21st, 1941, the Court, believing that "the ends of justice and the best interests of the public, as well as of the defendant" would be subserved thereby, placed him on probation for a period of two years.

Sometime early in the month of February of this year, it was reported to the Court that Hanson had killed Roosevelt Robinson, a Negro tenant on his farm near Hazen, Arkansas. The Court requested the Probation Officer to investigate and it was subsequently reported by that officer that Mr. Cade Calcote, a justice of the peace at Hazen, had held a preliminary hearing in the case and had declined to bind Hanson over to the Grand Jury. The Court requested that a further investigation be had, and sometime thereafter it was reported to the Court that there was grave doubt as to whether the defendant should have been discharged. Thereupon, the Court requested Honorable Sam Rorex, United States Attorney, Honorable Leon B. Catlett, Assistant United States Attorney, and Honorable W. H. Gregory, Assistant United States Attorney, to make a complete and exhaustive investigation of the case, with a recommendation as to whether or not a petition to revoke Hanson's probation should be filed. The investigation was made by these gentlemen, and they have informed the Court that Honorable J. B. Reed, Prosecuting Attorney for the Seventeenth Judicial District, which includes Prairie County, cooperated fully with them in the investigation; and it was their recommendation that the Probation Officer file a petition to revoke the defendant's probation. Such petition was filed on February 27th, 1943, and the Court on the same day entered an order that a bench warrant be issued for the defendant and that he be taken into custody.

Two days after this order was entered, the Prairie County Grand Jury, called in special session by Honorable W. J. Waggoner, Circuit Judge, indicted the defendant for murder in the first degree, irrespective of the fact that the justice of the peace had failed to bind him over to that body. The defendant was arrested by the Federal authorities prior to the service of a warrant upon him by the State officers; and an extensive hearing on the petition for revocation has this day been completed here.

The petition for revocation contains six charges, briefly stated as follows: (1) That the defendant on or about October 30th, 1942, unlawfully extorted from Roosevelt Robinson an untrue confession to the theft of rice of the value of $1,000; (2) that the defendant from on or about October 30th, 1942, to on or about January 30th, 1943, unlawfully held said Roosevelt Robinson in a condition of peonage; (3) that the defendant on January 30th, 1943, near Hazen in Prairie County, Arkansas, did unlawfully, knowingly, wilfully and feloniously, and with malice aforethought, kill Roosevelt Robinson by shooting him four times with a pistol; (4) that said defendant from October 30th, 1942, to January 30th, 1943, unlawfully kept said Robinson in fear and intimidation; (5) that on or about October 30th, 1942, in Prairie County, Arkansas, the said Hanson did unlawfully by threats, force, intimidation and violence, extort from Alf Sims a false confession to the effect that he, the said Sims, had aided and abetted Roosevelt Robinson in the alleged theft of the rice above referred to; and (6) that the said defendant is not a fit subject for probation; the sixth charge being in the nature of a conclusion based upon the other charges.

With the charge of murder pending in the State court we are not directly concerned. Hanson is not being tried here for murder, which is a crime against the State, but on a charge of having violated the terms of his probation growing out of his violation of a Federal statute. It is the prerogative of the State of Arkansas, and solely within its province, to try the defendant for murder in the first degree, the crime for which he has been indicted, and it is his right to have a jury pass upon his guilt or innocence of that crime, and to fix the punishment in the event he is found guilty. At the same time, it is the province and duty of this Court, under the Federal Probation Statute, 18 U.S.C.A. §§ 724–727, to revoke probation whenever it is satisfied that the ends of justice and the best interests of the public, as well as of the defendant, will be subserved thereby. And the

question before this Court now is whether or not it is to the best interests of the public, as well as of this defendant, that his probation be continued or that it be revoked. It is equally the duty of the Court to revoke probation in a proper case as it is to grant it.

As pointed out by the counsel for the Government in his argument in this case, it has been held that: "It may be that the probationer cannot be proven beyond a reasonable doubt to have committed a particular crime, and yet his course of conduct along that line may be such as to satisfy the judge that the probation ought to be revoked. Unless the broad discretion to revoke be fully recognized,"—and exercised, for that matter—"much greater caution will have to be exercised in extending this grace originally, and the benefits of the act will become greatly restricted." Campbell v. Aderhold, Warden, D. C., 36 F.2d 366, 367.

Now, taking up the count of the petition for revocation wherein the defendant is charged with having extorted from Roosevelt Robinson an untrue confession to the theft from said Hanson of rice in the value of $1,000, the Court finds that no substantial evidence has been introduced here to show that such a confession was extorted from Robinson by Hanson. Neither does the Court find that the charges with reference to keeping Robinson in a condition of peonage have been substantiated. There is no substantial proof to the effect that Hanson withheld any part of Robinson's wages from him. Nor does the Court find that the fourth charge, to the effect that from October 30th, 1942, to January 30th, 1943, the defendant unlawfully kept Roosevelt Robinson in fear and under intimidation, has been substantiated by the evidence.

A serious situation, however, is disclosed by certain phases of the evidence bearing upon the remaining charges, namely, that the defendant on January 30th, 1943, unlawfully and feloniously killed Roosevelt Robinson, and that said defendant on October 30th, 1942, by threats and intimidation extorted from Alf Sims a false confession to the effect that he had aided and abetted Roosevelt Robinson in the alleged theft of rice of the value of $1,000 from Hanson; and it devolves upon the Court to determine whether or not the course of conduct of the defendant in connection with these two charges has been such as to satisfy the Court that the defendant's probation should be continued or revoked. And after a consideration of the evidence I am convinced that the petition for revocation should be granted.

The defendant admits that he killed Roosevelt Robinson by shooting him four times with a pistol, but he contends that the killing was in necessary self-defense. The Court does not so find; and, irrespective of everything else in the case, this is the crucial question. Of the three laborers on the farm, Carlin, Will Brown, and Diemer, the defense contends that Will Brown and Carlin were at, or in close proximity to, the garage where Robinson was shot when the shooting took place. In evidence given by these three men prior to Hanson's arrest, each of them testified that he saw Robinson with the knife in question shortly before or at the time of the killing, and their testimony, or the necessary implication therefrom, was to the effect that Robinson was advancing upon Hanson with the knife, and that Hanson was forced to shoot him in self-defense. After Hanson was arrested by the Federal authorities and placed in jail in Little Rock, these three men repudiated their previous testimony. Carlin swore that at the time of the shooting he was pumping up a tire on a Ford coupe near the family residence and did not see the shooting. Will Brown swore that he was down at the cow barn and did not see the shooting, and Diemer that he was at his house about two hundred yards away, and also did not see the killing; and all three of these witnesses gave written statements to Mr. Roy Calhoun, Special Agent of the F.B.I., to the effect that Hanson told them that if they were called to testify they must state that Robinson had a knife on him. In this connection, Carlin stated that Hanson said that if they didn't tell this story they "might get the same thing Robinson got." Will Brown said that Hanson told him that "something might happen to me if I didn't do as he said." And Diemer, while not saying that Hanson actually threatened him, said that he testified falsely on account of his fear of Hanson. These three witnesses have testified at length at this hearing, and, while Brown and Diemer did not stick to their last-told tale in its entirety, they did confirm some of these statements, and both finally said that the statements they gave Mr. Calhoun were true. Carlin, while on the stand, in ef-

fect confirmed everything in his statement to Mr. Calhoun. Carlin's testimony has been assailed, among other things, on the ground that he is insane. However, Dr. A. C. Kolb, Superintendent of the State Hospital for Nervous Diseases, and Dr. N. T. Hollis, of the staff of that institution, have both examined Carlin within the last several days and report him as sane, in their opinions. The Court observed Carlin's demeanor on the stand, and is likewise of the opinion that he is sane; and the Court believes Carlin's testimony. No one, other than the defendant could have had any motive to procure these witnesses to testify falsely in the first instance.

There is another most significant thing in connection with the killing of Roosevelt Robinson, and that is the testimony with reference to the spring-handled knife which was found near the pool of blood in the garage right after the killing, and with which Hanson testified Robinson was about to make an attack upon him. Mr. Cade Calcote, the justice of the peace who came upon the scene shortly after the killing, said that when he observed the knife he thought that he had seen it before; that later in the day, and while driving with the defendant to Biscoe, he asked Hanson whose knife it was that Robinson had, and he stated that it was his knife and Robinson had stolen it from him. Calcote stated on the stand that he thinks he had seen the knife previously in Hanson's garage. Shortly after his arrest by Deputy Marshal Purvis, Hanson told Mr. Purvis that Robinson stole the knife from his dresser drawer, and that he had originally taken it from a transient worker in his field last year during the rice harvesting season; but in his signed and verified statement to Mr. Calhoun, Hanson said: "The knife that Robinson had in his hand was the one found on the ground. It was not mine, and I don't recall ever having seen it before." If Hanson did not have a guilty conscience, why did he make this statement, which is patently false? As a matter of fact, he testified in this case that right after he shot Robinson he went into the house and, thinking the knife that Robinson had was the same one he had in his dresser drawer, he went to the drawer and looked, and also looked in the kitchen, and in effect confirmed that fact. George Seegars, a witness for the defendant on another point, after he had left the witness stand and was in the course of leaving the courtroom, in response to questions as to whether or not Robinson had a knife, and if so what kind of a knife, said that Robinson had such a knife as was found at the scene of the killing, describing it in minute detail, and that he had seen it in Robinson's possession on numerous occasions. The Court did not believe Seegars' testimony at the time—and does not believe it now.

There has been a volume of testimony here with reference to Robinson's misdeeds of various kinds, but the fact remains that the Court does not feel, from the testimony in the case, that Hanson killed him in self-defense; and Hanson has given no logical and reasonable explanation of the actual killing.

With reference to the alleged extortion by Hanson of a false confession from Alf Sims (a Negro man, 51 years of age, residing at DeValls Bluff, who had at times worked for Hanson), to the effect that he had aided and abetted Roosevelt Robinson in the alleged theft of rice of the value of $1,000, the Court thinks that Robinson may have stolen two loads of rice from Hanson. He was certainly capable of doing so, as he had stolen other things, and had served a term in the penitentiary for theft of a cow; but the Court does not believe that Alf Sims had any part in it, if Robinson stole the rice. Hanson first accused Sims of stealing the rice in the presence of officers Holmes and Rounsavall, in the town of Hazen, and told Sims that Robinson had said that he helped him steal the rice and sell it to Joe Hook, a rice farmer. Sims denied the charge and stated that Robinson wouldn't say that to his face; whereupon, Mr. Holmes suggested that they take him down to the Hanson farm and confront him with Robinson. He was taken there and Robinson accused him of having a part in the theft, which accusation Sims denied. The two officers and Hanson thereupon drove him back into the town of Hazen. The bus for DeValls Bluff had left, but Hanson told Sims that he would drive him home, that is, from Hazen to DeValls Bluff. Sims states that when they got down the highway, Hanson drove off the road and told him that if he didn't confess to stealing the rice that he would have him in Little Rock in forty-five minutes and would have him beaten "just as he had had Roosevelt beaten." Sims states that he was afraid of Hanson and too old to be beaten; so he told him he would say what he wanted him to say.

Later, he was taken by Hanson before the justice of the peace in the city hall at Hazen and he there signed a statement in Hanson's presence to the effect that he assisted Roosevelt Robinson in stealing the rice and in delivering it to Joe Hook. According to the testimony of officer Holmes, as well as Sims, a day or two later Sims told the officer that he had made a false confession due to Hanson's threats.

The mayor and other reputable citizens of DeValls Bluff have testified as to the reputation of Alf Sims in the town in which he resides, and they have all said that his reputation is good. The only thing that has been brought up against him in this trial is the allegation that at one time a Negro woman sent him $10 to pay the taxes on a house of hers occupied by him, and that he failed to pay the taxes and let the property go delinquent. This has been explained to the satisfaction of the Court by Mr. Roy Hill of DeValls Bluff, a merchant and planter of that town, who, after testifying to Sims' good reputation in that neighborhood, stated that Sims was occupying the woman's house at the time as a tenant, and that his understanding of the matter was that Sims was supposed to pay the taxes out of his rent, that he received no actual cash from the woman, and that he in fact paid the rent to her daughter, who failed to pay the taxes. The Court believes that Mr. Hill's recollection of the transaction is better than that of anyone else who has testified as to it, in view of the fact that the owner of the property at the time wrote to Mr. Hill about her taxes, and he was the moving party in having the matter taken up with Sims.

The Court observed Alf Sims' demeanor on the stand and believed his testimony; and the Court does not believe from the evidence in this case that the rice farmer, Joe Hook, received any stolen rice.

The Court is of the opinion that the course of conduct of the defendant, with reference to the killing of Roosevelt Robinson and the extortion of the false confession from Alf Sims, requires that his probation be revoked. This means that the Court should now assess his punishment for his violation of the Harrison Anti-Narcotics Act in forging the prescriptions for morphine, hereinbefore referred to; and does not mean that the Court should or could, in any sense or in any degree, punish him for the extortion of said confession, or for the killing of Robinson. These are matters with which the State of Arkansas only is concerned; and, as stated, an indictment is now pending against Hanson in the State court upon a charge of murder.

It is the judgment and sentence of the Court that the petition for revocation of probation be granted and that the defendant's probation be revoked; and, on the first count of the indictment, that he be confined in an institution to be designated by the Attorney General for a period of two years. The sentence on each of the remaining counts of the indictment will be the same, to run concurrently with the sentence on count one.